

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

FILED

APR - 7 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 05-91112-D-7 |
| ANGELO D. JIMENEZ and JUDITH A. JIMINEZ, | Docket Control No. UST-1 |
| Debtors. | Date: March 26, 2008<br>Time: 10:00 a.m.<br>Dept: D |

### MEMORANDUM DECISION

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

On January 28, 2008, the chapter 7 trustee in this case, Lawrence G. Gray ("the Trustee") filed his Trustee's Final Report and Proposed Distribution, together with his application for final compensation and reimbursement of expenses ("the Final Report"), in which he requested compensation, pursuant to 11 U.S.C. §§ 330(a) and 326(a), in the amount of $6,319.16, and reimbursement of expenses in the amount of $41.89, for a total of $6,361.05. On February 19, 2008, the United States Trustee filed an objection to the Final Report, as Docket Control No. UST-1 ("the Objection"). For the reasons set forth below, the court will sustain the Objection in part.

### I.  INTRODUCTION

On May 31, 2005, Angelo D. Jimenez and Judith A. Jimenez ("the Debtors") filed a voluntary petition for relief under

/ / /
/ / /

chapter 7 of the Bankruptcy Code,[1] thereby commencing this case. In their Schedule of Real Property (A-schedule), the Debtors listed their residence at 3808 Gil Court, Modesto, California ("the Property"). The Debtors valued the Property at $295,000, scheduled a deed of trust against it in the amount of $236,000, and claimed a homestead exemption in the amount of $75,000. The Trustee did not object to the claim of exemption.

In September of 2005, the Trustee employed a real estate broker to market the Property for sale. The Trustee states that, at about the same time, he informed the Debtors that as a condition of their remaining in the Property while it was on the market, he would require them to remain current on the mortgage payments and real property taxes. Whether the Debtors agreed is disputed.

On April 20, 2006, the Trustee filed a motion for authority to sell the Property to a third party for $345,000 ("the Sale Motion"). The Trustee represented in the Sale Motion that after payment of the lien, the Debtors' exemption, and closing costs and real estate commissions, net proceeds to the estate should be approximately $9,850. Thus, he predicted that "the sale should enable Trustee to pay a dividend to unsecured creditors." Sale Motion, ¶ 10. He further represented that the sale would be in the best interests of the estate. Id.

---

1. Unless otherwise indicated, all Code, chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated prior to the effective date (October 17, 2005) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).

The Sale Motion was granted by order dated May 16, 2006. Just before the sale was scheduled to close, the Trustee discovered that the Debtors had not kept the mortgage and tax payments current, with the result that the mortgage lender and the taxing agency would need to be paid out of escrow approximately $3,914 that the Trustee believed the Debtors should have paid. Nevertheless, the Trustee went ahead with the sale, but reserved funds from the Debtors' homestead exemption to cover the mortgage and tax payment shortfall. Later, following briefing and a hearing, the court allowed the Debtors their full exemption of $75,000. The result was that the net proceeds to the estate from the sale of the Property totaled $9,440.21.[2]

In addition, the estate received $1,148.15 on account of non-exempt tax refunds and $590 for the non-exempt equity in the Debtors' vehicle. After adding accrued interest on bank deposits and deducting the sums paid for the Trustee's bond premium and attorney's fees and costs, there remained $6,361.05 in the estate at the time the Trustee filed the Final Report. There are no other assets available for administration.

By way of the Final Report, the Trustee seeks to utilize all funds remaining in the estate, $6,361.05, in payment of his compensation and reimbursement of his expenses, with the result that there will be no distribution to unsecured creditors.

/ / /

---

2.  The Trustee received $46,940.21 out of the escrow, which included $37,500 attributable to the Debtors' exemption. See closing statements attached to Trustee's Report of Sale, filed June 5, 2006. The later payment of that $37,500 to the Debtors reduced the net to the estate to $9,440.21.

The U.S. Trustee argues that at the time they were performed, the Trustee's services in selling the Property and collecting the tax refunds and non-exempt vehicle equity were not reasonably likely to benefit the estate and were not necessary to the administration of the case, and thus, that the Trustee should not be compensated for those services or reimbursed for the expenses associated with them. The Trustee responds that the U.S. Trustee's approach unfairly applies 20/20 hindsight to the Trustee's handling of the case, and would in essence make trustees "guarantors" of a dividend to unsecured creditors in every administered case. The U.S. Trustee replies that in the exercise of reasonable foresight, the Trustee must have known his administration of estate assets was not likely to benefit creditors.

## II. ANALYSIS

A. Standards for Trustee Compensation

The court's analysis is governed by 11 U.S.C. § 330(a)(1), which permits the court to award "reasonable compensation for actual, necessary services rendered by the trustee," and "reimbursement for actual, necessary expenses." § 330(a)(1)(A), (B). The court may, sua sponte or on motion of the U.S. Trustee or other party in interest, "award compensation that is less than the amount of compensation that is requested." § 330(a)(2). The court "shall not allow compensation for . . . services that were not reasonably likely to benefit the debtor's estate" or

/ / /

/ / /

Case 05-91112    Filed 04/07/08    Doc 85

"necessary to the administration of the case." § 330(a)(4)(A).[3] In any event, a trustee's compensation may not exceed the maximum amounts set forth in § 326(a).[4]

The amounts computed pursuant to § 326(a) constitute a "cap" on a trustee's fees in a given case; as the U.S. Trustee points out, they are not an entitlement. "The statutory maximum in Section 326(a) comes into play only after the court determines a reasonable fee award according to the appropriate criteria." Roderick v. Levy (In re Roderick Timber Co.), 185 B.R. 601, 605 (9th Cir. BAP 1995).

The Trustee bears the burden of establishing his entitlement to the requested fees. Roderick, citing In re Travel Headquarters, Inc., 140 B.R. 260, 261 (9th Cir. BAP 1992). The court "has wide discretion in determining reasonable compensation." Roderick, 185 B.R. at 606, citing In re Financial Corp. of America, 114 B.R. 221, 224 (9th Cir. BAP 1990).

/ / /

/ / /

---

3. The U.S. Trustee notes that certain amendments to § 330(a) made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") may apply in this case, because the case was commenced after the enactment date of BAPCPA, although before its effective date. Specifically, § 330(a)(3) as amended and new § 330(a)(7) appear to apply in cases filed during the gap period. However, because the court's ruling is based on other unchanged subdivisions of § 330(a), the court need not determine the effect of these changes in the instant case.

4. These maximum amounts are 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, five percent on any amount in excess of $50,000 but not in excess of $1,000,000, and three percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims. § 326(a).

- 5 -

B. The Trustee's Request for Compensation

The application of the § 326(a) "cap" to the sale of the Property is central to the parties' dispute. The U.S. Trustee, citing the language of the Final Report, believes the Trustee seeks compensation based on the cap, as reduced to the total amount of available funds. The Trustee, on the other hand, citing the time sheet he submitted along with the Final Report, contends that he seeks compensation based solely on a lodestar calculation (hourly rate multiplied by time spent), reduced to the total amount available. Either way, the court views the Trustee's purported "reduction" to an amount that takes all the money remaining in the estate as a hollow reduction.

The court need not decide which of the competing contentions is correct. However, for other reasons, the § 326(a) computation is important to the disposition of the Objection.

Because a trustee does not receive compensation based on sums he or she distributes to debtors, the § 326(a) percentages would be applied to the sale price of the Property, $345,000, less the amount of the Debtors' homestead exemption, $75,000. The calculation yields maximum allowable compensation of $16,750.[5]

Thus, if the Trustee expected the sale to yield $9,850 after payment of the lien, costs of sale, and the Debtors' exemption, as he stated in the Sale Motion, and if he was anticipating compensation based on the § 326(a) cap, the sale was, on its face, administratively insolvent, without even considering the

---

5. 25% of $5,000 + 10% of $45,000 + 5% of $220,000.

- 6 -

Trustee's attorney's fees. Further, even if the Trustee had been allowed to surcharge the Debtors' exemption to cover the $3,914 mortgage and tax payment shortfall, as he attempted, the sale would still have been administratively insolvent.

The Trustee argues that at the time he made the decision to sell the Property, he had incurred only limited fees, based on his actual time spent and his hourly rate. Expecting to seek compensation on that basis, rather than on the basis of the § 326(a) percentages as applied to the sale price, he claims he reasonably expected the sale to return a dividend to unsecured creditors. The reason it did not, he contends, is that the post-sale litigation over his attempted surcharge of the Debtors' exemption took up so much time that, based on a lodestar calculation, his fees exceed the amount of funds on hand.

The difficulty is that the Trustee failed to submit in the Sale Motion any analysis of the potential effect of his compensation on the benefit creditors might expect to receive from the sale. Instead, the figures he offered were of projected net proceeds, $9,850, and the total of timely filed claims, $6,575.79. From these figures, creditors reviewing the Sale Motion might reasonably have expected a significant dividend, perhaps as much as 100%. Instead, the Trustee now proposes that they receive nothing.

Where a trustee proposes to sell an asset with such a narrow margin of equity that maximum trustee compensation under § 326(a) would render the transaction administratively insolvent, it is incumbent on the trustee to clearly represent in the sale motion what compensation he expects to seek for his services in

connection with the transaction, so that the likely benefit of the transaction may be properly assessed in advance.[6]

The omission of these disclosures from the Sale Motion in this case left the court and creditors with an incomplete picture of the transaction and an inability to accurately assess its benefit. Because of the Trustee's failure to disclose in the Sale Motion the compensation he would be seeking, the court cannot determine whether the proposed sales transaction was administratively insolvent, and thus, whether the Trustee's services were reasonably likely to benefit the estate at the time they were rendered.

Assuming the court takes the Trustee's contention at face value that he was not going to seek compensation based on the cap, the court still has problems with the administration of the case. The Trustee contends it was the Debtors' alleged breach of their agreement to make the mortgage and tax payments that turned the tide on the sale of the Property. He claims he discovered the breach two days before the sale was to close, at which point his choices were to abandon the Property or to continue to market it in a rapidly declining market. He chose to proceed with the sale and to litigate the issue of the Debtors' breach and his attempted surcharge of their exemption at a later time.

The Trustee fails to mention that, even though he lost the surcharge battle, the sale itself still produced $9,440.21 net to the estate, a figure only $410 short of the Trustee's original

---

6. Similarly, some disclosure about other anticipated administrative expenses, such as the trustee's attorney's fees, would be appropriate.

projection of $9,850. This occurred because the total mortgage payoff, even with the Debtors' default, was $1,361 less than the Trustee had projected in the Sale Motion, and because closing costs came in at $1,029 less than he had projected. <u>See</u> closing statements attached to Trustee's Report of Sale, filed June 5, 2006.

Thus, at the time the sale closed, and despite the Debtors' alleged breach, the sale might have been expected to produce a benefit to unsecured creditors. It was the fees and costs the Trustee and his counsel incurred in attempting to surcharge the Debtors' exemption that caused the Trustee's fees, even when based on a lodestar calculation rather than § 326(a), to exceed the amount of the net proceeds of the sale.

In other words, even assuming at the time the sale was approved the Trustee would seek compensation at the lodestar rate, it was not the Debtors' alleged unexpected breach that rendered the sale insolvent, but the Trustee's choice to litigate that matter. Apparently, the failure to assess the likely impact of trustee's fees and attorney's fees when the Sale Motion was filed and to reassess that impact after the close of escrow resulted in the Trustee himself losing sight of the cost-benefit analysis at the time he decided to dramatically increase those fees by litigating the surcharge issue.

It is a trustee's responsibility to keep uppermost in mind the effect his administrative fees and those of his professionals

/ / /

/ / /

/ / /

will have on the likely benefit to unsecured creditors.[7]  It does not appear the Trustee has done so in this case.

The court notes that according to his time sheet, filed with his declaration on January 28, 2008, the Trustee incurred fees of $4,270 litigating the surcharge issue (and the relatively minor matters of collecting the Debtors' tax refunds and their payment for their non-exempt vehicle equity), between July 11, 2006 and October 7, 2006.  Yet the alleged breach, according to the Trustee, amounted to only $3,914.  Thus, the Trustee incurred fees exceeding the amount in dispute, before his attorney's fees are even taken into account.[8]

The court concludes that it was the Trustee's responsibility to disclose his anticipated compensation in the Sale Motion, when it must have been clear to him that the maximum compensation under § 326(a) would render that particular transaction administratively insolvent.  Otherwise, the court must factor in

---

7.  See Unsecured Creditors' Committee v. Puget Sound Plywood, Inc., 924 F.2d 955, 958-59 (9th Cir. 1991), citing In re Wildman, 72 B.R. 700, 707 (Bankr. N.D. Ill. 1987).  An attorney proposing to seek fees under § 330(a) must consider:

(a) Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?

(b) To what extent will the estate suffer if the services are not rendered?

(c) To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

8.  The Trustee claims the amount in dispute was somewhat higher, because of issues concerning a second non-exempt vehicle.  In the court's view, the difference in amount does not change the conclusion that the Trustee incurred fees significantly disproportionate to the amount at stake.

Case 05-91112    Filed 04/07/08    Doc 85

an administrative burden that would include trustee's fees based on the cap, when the court considers whether the trustee's services were reasonably likely to benefit the estate at the time the services were rendered.

In addition, the Trustee allowed his fees to increase out of all reasonable proportion to the amounts in dispute and to the amount of the net proceeds, to the point where the fees, if allowed, would consume all the remaining funds. He submitted a Final Report that, by its terms, calculated his compensation based on the § 326(a) cap, and applied a "compensation reduction" of $10,526.39 to arrive at a figure equal to the remaining funds in the estate.[9]

### III. CONCLUSION

In these circumstances, the court concludes that at the time the Trustee's services were rendered, the sale transaction was not reasonably likely to benefit the estate and was not necessary to the administration of the case. Viewed in light of the maximum allowable compensation under § 326(a), the sale was, in itself, administratively insolvent, and by a wide margin. The Trustee chose not to mention that fact in the Sale Motion, and neglected to make any assessment of the impact his compensation was likely to have on the ultimate benefit of the sale to unsecured creditors. He led those creditors to believe the sale would likely result in a significant benefit to them, but then

---

9. The court recognizes the Trustee's argument that the reason the Final Report appears to compute his compensation based on the § 326(a) percentages is that the computer software used to prepare the reports utilizes that format. However, nothing prevented the Trustee from clarifying the matter had he chosen to do so.

Case 05-91112    Filed 04/07/08    Doc 85

proceeded to deplete that benefit by litigating the surcharge issue, apparently without regard to a cost-benefit analysis. Although the court agrees with the Trustee that trustees are not guarantors of a dividend to unsecured creditors, neither are unsecured creditors guarantors of the Trustee's compensation.

In short, if a trustee is going to eschew a hindsight approach, he must give the court and creditors enough information to allow for the exercise of reasonable foresight. In this case, the Trustee did not do so.

The court recognizes that by reducing the Trustee's requested compensation to a more reasonable sum in light of all the circumstances, there should be a significant dividend to unsecured creditors. For this reason, and because the Trustee's efforts produced the funds presently available, the court will allow reimbursement of the Trustee's expenses, $41.89, plus compensation in the amount of $2,000. The court arrives at this latter figure roughly by deducting from the $6,319 in requested compensation the $4,270 the Trustee charged for litigating the surcharge issue.[10]

/ / /

/ / /

---

10. The court recognizes that an argument could be made for deducting the $4,270 not from the $6,319, which is the amount of remaining funds available, but from the $7,840, which represents the Trustee's time charged on an hourly basis. However, the Trustee is chargeable with allowing his actions to deplete the remaining funds unnecessarily in the first instance. Further, the court's decision to start with the $6,319 figure also takes into account to some extent what the court finds to be excessive time charged, as for example with the one hour charged for preparing a one-sentence report of sale (filed November 19, 2007), and the one and one-half hours charged for a two-sentence report of sale (filed June 5, 2006).

For these reasons, the court will enter an order sustaining the Objection in part, and allowing compensation to the Trustee and reimbursement of expenses in the total amount of $2,041.89.

Dated: April 7, 2008

*Robert Bardwil*
ROBERT S. BARDWIL
United States Bankruptcy Judge

## CERTIFICATE OF MAILING

I, Andrea Lovgren, in the performance of my duties as assistant to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

Office of the US Trustee
501 "I" Street, Suite 7-500
Sacramento, CA 95814

Lawrence Gray
4719 Quail Lakes Dr., #G
P.O. Box 255
Stockton, CA 95207

Abram Feuerstein
20 N Sutter St., 4th Floor
Stockton, CA 95202

DATE: April 7, 2008

_____
Andrea Lovgren